AO 91 (Rev. 11/11)  Criminal Complaint

**FILED**

Jun 24 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JEFFERSON ARRECHAGA ("ARRECHAGA") | ) | Case No.  3:25-mj-70778 MAG |
| a/k/a Jose Archaga Barriento and Barriontos | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 8, 2025_____ in the county of _____San Francisco_____ in the _____Northern_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi) | Possession with Intent to Distribute a Mixture or Substance Containing at Least 40 Grams of Fentanyl<br>Maximum penalties:<br>• Imprisonment: Min 5 years up to 40 years (21 U.S.C. § 841(b)(1)(B))<br>• Fine: $5 million (21 U.S.C. § 841(b)(1)(B))<br>• Supervised Release: Min. 4 years - Max. life (21 U.S.C. § 841 (b )(1 )(B))<br>• Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))<br>• Forfeiture: 21 U.S.C. § 853(a) I Deportation I Denial of Federal Benefits |

This criminal complaint is based on these facts:

See attached affidavit of DEA Task Force Agent Nico Discenza

☑ Continued on the attached sheet.

Approved as to form ____/s/_____
AUSA Jeffrey Bornstein

by telephone
Sworn to before me ~~and signed in my presence~~.

Date: _____06/23/2025_____

City and state: _____San Francisco, California_____

_____/s/Nico Dicenza_____
*Complainant's signature*

Nico Dicenza Sgt. SFPD and DEA Task Force
*Printed name and title*

*Judge's signature*

Hon. Thomas S.Hixson United States Mag.Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN**</u>

<u>**ARREST WARRANT AND CRIMINAL COMPLAINT**</u>

I, Domenico Discenza, a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION**</u>

1.      I make this affidavit in support of an application for an arrest warrant and criminal complaint charging JEFFERSON ARRECHAGA ("ARRECHAGA") with possession with intent to distribute a mixture or substance containing over 40 grams of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi), occurring on or about May 8, 2025, in San Francisco, California, in the Northern District of California.

<u>**SOURCES OF INFORMATION**</u>

2.      The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses.  Where statements made by other individuals (including other Task Force Officers, Special Agents, and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part.  Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3.      Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case.  Rather, I have set forth only the facts that I believe are necessary to

support probable cause for a criminal complaint and an arrest warrant.  My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4.     I am a Sergeant at the San Francisco Police Department ("SFPD") and have worked as a sworn officer for the SFPD for approximately 26 years.  I have been assigned as a Sergeant at the SFPD Narcotics Unit since March 2023, and prior to that I was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years.  I am a sworn Case Specific Task Force Officer for the Drug Enforcement Administration.  I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5.     In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, interview techniques, undercover operations, and the general operation of drug trafficking organizations.  During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations.

6.     During my employment at SFPD, I have participated in many controlled substance investigations.  I have discussed the methods and practices used by drug traffickers with other law enforcement officers.  I have also had conversations with drug users and sellers over the course of my career.  I have also participated in many aspects of drug investigations

including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

7.      Based on my training and experience, as well as conversations I have had with drug dealers and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8.      I have also had discussions with other law enforcement officers and training in the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

9.      I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part.

## APPLICABLE STATUTE

10.     **Possession of Controlled Substance with Intent to Distribute**.  Under 21

U.S.C. § 841(a)(1) and (b)(1)(C) it is unlawful for any person to knowingly and intentionally

possess with intent to distribute a federally controlled substance.  Under 21 C.F.R. § 1308.12,

fentanyl is a Schedule II controlled substance.  Under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi),

any person who knowingly and intentionally possesses with intent to distribute 40 grams or more

of a mixture or substance of fentanyl is subject to a five-year mandatory minimum sentence of

imprisonment.

## STATEMENT OF PROBABLE CAUSE

11.     On May 8, 2025, members of the SFPD Narcotics Unit participated in a narcotics

surveillance operation targeting the 600 block of McAllister Street in San Francisco, California,

in the Northern District of California. This is an area known for numerous narcotics-related

activities in the evening hours. SFPD has received numerous complaints regarding these

activities. This area is known for drug sales and users congregating to purchase drugs. Members

of the SFPD Narcotics Unit have been involved in numerous arrests in this area to include

purchasing drugs for sale.

12.     Members of the SFPD Narcotics Unit were conducting surveillance of the area in

vehicles and on foot. SFPD Officer Puccinelli was conducting surveillance on foot.

13.     Officer Puccinelli has been assigned to the SFPD Narcotics Unit since March

2018 and has conducted hundreds of hours of narcotics related surveillance. He is familiar with

the mannerisms of a buyer and seller during street level drug transactions.

14.     Officer Puccinelli observed a man later identified as ARRECHAGA standing on

the north side of McAllister Street, mid-block between Gough and Franklin Streets. ARRECHAGA was wearing a black hooded sweatshirt that said "Champion" on the front and dark colored pants.

15.    Officer Puccinelli observed ARRECHAGA standing between a dark blue Chevy Silverado and a black Mercedes sedan. Officer Puccinelli's attention was drawn to ARRECHAGA because he observed him retrieving a clear plastic bag from his person which contained an unknown white substance that Officer Puccinelli believed to be narcotics. Additionally, there were several other people loitering in front of ARRECHAGA.

16.    ARRECHAGA appeared to be speaking with another male who was wearing a gray hat. Officer Puccinelli observed quick, furtive movements between ARRECHAGA and several of the people who were loitering in the area. After the furtive hand movements, ARRECHAGA appeared to be hypervigilant and consistently looking to his east and west as if he was checking his surroundings.

17.    Officer Puccinelli believed ARRECHAGA possessed the suspected narcotics in his possession for sale and advised the SFPD arrest teams to detain ARRECHAGA because he observed him with suspected narcotics along with the furtive hand movements that were consistent with street level drug deals between ARRECHAGA and several people who were loitering on the block.

18.    While Officer Puccinelli continued surveillance on ARRECHAGA, Officer Montero and Deputy Martinez responded to the location in an unmarked police vehicle and activated their emergency lights.

19.    Upon noticing the unmarked police vehicle, ARRECHAGA began walking briskly west on McAllister Street towards Gough Street. ARRECHAGA hunched over and began

to limp in an attempt to blend in with others walking from the area. Officer Puccinelli directed Officer Montero and Deputy Martinez to ARRECHAGA.

20.     Officer Montero and Deputy Martinez identified themselves as police officers and attempted to place ARRECHAGA into handcuffs.  Deputy Martinez was able to place one handcuff on ARRECHAGA's left wrist and ARRECHAGA pulled his right hand toward the front of his body and appeared to grab something. ARRECHAGA attempted to walk into the bushes along the building line and made a tossing motion. Officer Montero and Deputy Martinez heard something hit the ground. The Officers were then able to place ARRECHAGA into handcuffs.

21.     Officer Montero searched immediately inside of the bushes where the object was tossed and located a single Honda key fob. ARRECHAGA denied that this key fob belonged to him.

22.     Officer Montero verbally obtained ARRECHAGA's information and attempted to conduct a computer check. ARRECHAGA initially stated that his name was Jefferson Jose Barrientos with the date of birth of September 1, 1993.

23.     Officer J. Murphy arrived on scene and recognized ARRECHAGA and knew his true identity. ARRECHAGA acknowledged that he had a warrant for his arrest and Officer J. Murphy conducted a computer check of ARRECHAGA through dispatch.

24.     Dispatch advised the SFPD Officers that ARRECHAGA had a warrant for his arrest. The SFPD Officers placed ARRECHAGA under arrest.

25.     Officer Montero conducted a search of ARRECHAGA incident to arrest and located a plastic bag of suspected Fentanyl (87.7 grams -gross weight) from ARRECHAGA's front hoodie pocket. The Alameda Crime Lab conducted an examination of the suspected

fentanyl located on ARRECHAGA and it was determined to contain 4-ANPP and fentanyl with a net weight of 85.34 grams.

26.    Officer Montero also located empty plastic bags in ARRECHAGA's pants leg pocket, a (E13) cell phone and $2,169 of U.S. currency in his pants pockets.

27.    Officer Montero provided Officer J. Murphy with the key fob that was discarded by ARRECHAGA that led to Officer J. Murphy locating a blue Honda CR-V parked on the west side of Gough Street just south of McAllister approximately a quarter block away from where ARRECHAGA was found. Officer Murphy activated the key fob, and it unlocked the Honda.

28.    Honda CR-V had a California license plate number 9TLC737. The registration came back to a different person (known to law enforcement but withheld for purposes of this affidavit) with an address in Oakland, California.

29.    Officer Montero is assigned to the SFPD Narcotics Unit as an investigator/ K9 handler for K9 Cooper. Cooper is a single purpose narcotics detection K9 trained to detect the order of various controlled substances including fentanyl, cocaine salt, cocaine base, methamphetamine, heroin, marijuana, MDMA and their analogues. K9 Cooper and Officer Montero are P.O.S.T. certified as a narcotics Handler/Canine team. Officer Montero has been Cooper's handler and certified with him since 2019. Officer Montero regularly trains narcotics odor with K9 Cooper and regularly deploys K9 Cooper in the field to detect narcotics odors as part of their regular duties.

30.    Officer Montero utilized K9 Cooper to conduct a narcotics "sniff" search of the Honda bearing the California license plate of 9TLC737. K9 Cooper searched the exterior and alerted to the exterior of the trunk. K9 Cooper entered the rear of the vehicle and Officer

Montero observed distinct behavior changes where K9 Cooper's tail was wagging rapidly, and his nose was going up and down as well as back and forth.

31.    Officer Montero reintroduced K9 Cooper back into the vehicle from the rear driver side door. K9 Cooper immediately focused on a backpack and bag on the floorboard in the rear passenger of the vehicle indicating an alert to the presence of narcotics odor.  He had K9 Cooper search the front seats. K9 Cooper alerted to the presence of narcotics odor on the front passenger floorboard.

32.    Officer J. Murphy conducted a search of the vehicle and located a backpack on the driver side floorboard behind the front seat containing 389.3 gross grams of heroin, 32.1 gross grams of Alprazolam pills, 7.9 gross grams of suspect M30 fentanyl pills, and 41.8 gross grams of suspected fentanyl.

33.    Officer J. Murphy also located a plastic bag on the rear passenger driver side floorboard containing 437.2 gross grams of suspected methamphetamine.



34.     Officer D. Maher located a 'brick' of suspected fentanyl which weighed 999.3 gross grams[1], under the front passenger seat. The Alameda County Crime Lab examined the suspected fentanyl, and it was determined to contain 4-ANPP and fentanyl with a net weight of 984 grams.



35.     Officer Ospital located an additional 1.5 gross grams of fentanyl in the center console of the vehicle, 27.3 gross grams of suspected fentanyl from a sunglass holder, and 4.0 gross grams of suspected fentanyl in the driver's side armrest.

36.     Additionally, in the vehicle, there were numerous empty plastic bags, used plastic bulk wrapping, and a total of four (4) black digital scales.

---

[1] The photo snip of the brick of fentanyl is shown with the gross weight using the TruNarc device for presumptive field testing.

37.     The below photo depicts the items seized from ARRECHAGA and the HONDA CR-V:



38.     Based on my knowledge, training, experience, and consultation with other officers, I am aware that those engaged in distribution, sales or furnishing of controlled substances will have multiple types of drugs. This practice is done to diversify the inventory and cater to a broader customer base thus increasing sales opportunities.  Thus, the various types of drugs possessed by ARRECHAGA supports a determination that probable cause exists that ARRECHAGA possessed the various drugs with the intent to distribute them.

39.     Based on my knowledge, training, experience, and consultation with other officers, I am aware that digital scales are commonly used by drug dealers to weigh the drugs as they sell them or for pre-packaging.  Accordingly, the four (4) digital scales found in the Honda CR-V supports a determination that probable cause exists that ARRECHAGA possessed the various drugs with the intent to distribute them.  This conclusion is reinforced by the packaging materials located in the vehicle and on ARRECHAGA's person, all of which are consistent with the intent to distribute drugs. Further, based on my knowledge, training, experience, and consultation with other officers, I am aware that drug traffickers will use vehicles to transport

and hold large quantities of drugs, just as it appears that ARRECHAGA was going with the CR-V.

40.    Based on my knowledge, training, experience, and consultation with other officers, I believe that the amount of fentanyl and other drugs possessed by ARRECHAGA and located in the vehicle was a greater quantity possessed than for mere personal use. This quantity suggests a mid-level distributor that could be supplying lower-level street drug dealers. My conclusion is reinforced by the larger baggies used to package drugs and the four (4) digital scales.

41.    Based on my training, experience and conversations with other officers, I am aware cell phones are used by drug dealers to coordinate sales, communicate with suppliers or buyers, arrange pick-ups and drop offs and may contain contact lists, text messages or other applications to facilitate sales and distribution.

42.    Based on my training, experience and conversations with other officers, I am aware that typical street level sales use smaller denominations to buy smaller quantities. Thus, the cash found on ARRECHAGA may reflect recent or ongoing sales. Furthermore, ARRECHAGA was in possession of larger denominations which indicates he may be selling larger quantities of drugs to other dealers on the street.

43.    In addition, ARRECHAGA was in the Tenderloin neighborhood of San Francisco, an area known for drug sales and use. This fact was reinforced by the fact ARRECHAGA was observed by an undercover officer surrounded by a group of people and seen with a clear plastic bag containing a white substance of suspected narcotics and engaged in a furtive hand movement with several subjects, consistent with street level hand to hand drug transactions.

44.     ARRECHAGA also attempted to throw away the key fob to keep law enforcement from discovering the car he was using that also contained substantial amounts of controlled substances as noted above that he was planning to sell or distribute to others.

## **CONCLUSION**

45.     Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on or about May 8, 2025, in the Northern District of California, ARRECHAGA possessed over 40 grams of a mixture and substance containing fentanyl with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi).  Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for his arrest.


_/s/ Domenico Discenza_____
Domenico Discenza
Task Force Officer
Drug Enforcement Administration


Sworn to before me over the telephone and
signed by me pursuant to Fed. R. Crim. P.
4.1 and 4(d) on this 23rd day of June 2025.
This complaint and warrants are to be filed
under seal.


HONORABLE THOMAS S. HIXSON
United States Magistrate Judge

12