CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    FAX: (415) 436-7234
    Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JEFFERSON ARRECHAGA,<br><br>    a/k/a JOSE ARCHAGA BARRIENTO<br>    AND BARRIONTOS,<br><br>    Defendant. | NO. 3:25-CR-00226 MMC<br><br>UNITED STATES' SENTENCING<br>MEMORANDUM<br><br>Date:    March 4, 2026<br>Time:    2:15 p.m.<br>Court:   Hon. Maxine M. Chesney |

**OVERVIEW AND SUMMARY**

    This case arises out of the United States' continuing efforts to combat the sale of fentanyl in and around the Tenderloin neighborhood. Mr. Arrechaga was observed dealing drugs by the San Francisco Police Department ("SFPD") and when he was arrested, he was found to be in possession of over 85 grams of lab-tested fentanyl. He also threw away his key fob as he was being arrested. SFPD later retrieved the discarded key fob and used a trained dog to conduct a search of the Honda that Mr. Arrechaga was using. The dog alerted and the SFPD officers searched the car and found substantial

UNITED STATES' SENT. MEMO
3:25-CR-00226 MMC
    1
    V. 1/29/2025

amounts of fentanyl and methamphetamine, pills and heroin. In total, Mr. Arrechaga admits that he possessed over 1.2 kilograms of fentanyl, 437 grams of methamphetamine, and other drugs, including over 380 gross grams of heroin.

Given the 3553(a) factors in this case, the parties have entered into a C-Plea agreement that, if accepted by the Court, will result in a 50-month sentence of imprisonment followed by a three-year term of supervised release with two special conditions, a stay away order, and suspicionless search condition, forfeiture, and almost certain deportation. Probation agrees with that sentencing recommendation.

### PENDING OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

There are two minor challenges made by Mr. Arrechaga that the United States and Probation have rejected: paragraphs 9 and 25 of the Presentence Investigation Report ("PSR").

Mr. Arrechaga's first objection is that the Police Officer's description of Mr. Arreaga's conduct should include the modifier that he "appeared" to take the actions described by the Officer in that paragraph. There is no need for that modifier. The Officer describes what he saw.

Mr. Arrechaga's second objection concerns the inclusion of the heroin in the converted drug calculation because there was no lab testing. Mr. Arrechaga admitted in the Plea Agreement that "Inside the Honda, I possessed a backpack on the driver side floorboard behind the front seat that contained 389.3 gross grams of heroin, 32.1 gross grams of Alprazolam pills, 7.9 gross grams of suspected M30 fentanyl pills, and 41.8 gross grams of fentanyl." *See* Plea Agreement ¶ 2, p. 3 at 12-15. He cannot now claim that the heroin should not count.

Both remaining objections should be rejected and neither is material to the correct Guideline Sentencing Range or the sentencing recommendation both parties and Probation are making in this case.

### OFFENSE CONDUCT

The arrest in this case arises out of the continued efforts by the United States Attorney's Office to support law enforcement efforts to stop the sale of fentanyl and methamphetamine in the Tenderloin neighborhood in San Francisco through a combination of enforcement and dispositions that prevent drug

traffickers from returning to the Tenderloin. The program focuses on eradicating street-level dealing in the Tenderloin in instances when the defendant has limited criminal history and / or limited amounts of controlled substances.

In this case, the quantity of drugs found on the defendant was substantial. In addition, as he realized that he would be arrested, Mr. Arrechaga attempted to prevent the police from finding his car that was loaded with even more drugs by throwing away the key fob in the bushes.

The Offense Conduct is set forth in detail in the Presentence Report Paragraphs 7-15. As set forth in Plea Agreement at Paragraph 2:

Mr. Arrechaga admits that in the evening of May 8, 2025, near the 600 block of McAllister Street of San Francisco, in the Tenderloin neighborhood, he was selling drugs, including fentanyl and methamphetamine. He admits that he sold drugs to various people that evening and that at the time he was arrested, he was in possession of fentanyl that he intended to sell. In the search incident to his arrest, he admits that law enforcement found him to be in possession of 85.34 grams of fentanyl (net weight per lab testing), $2,169 in cash that were the proceeds of his drug dealing that night, and a cell phone that he was using to sell drugs.

When police officers tried to arrest him, Mr. Arrechaga threw away the key fob for a Honda he had been using that was parked nearby. He admits that he had additional drugs, including methamphetamine and fentanyl, in various parts of the car that he intended to distribute to others. Inside the Honda, Mr. Arrechaga possessed a backpack on the driver side floorboard behind the front seat that contained 389.3 gross grams of heroin, 32.1 gross grams of Alprazolam pills, 7.9 gross grams of suspect M30 fentanyl pills, and 41.8 gross grams of fentanyl. He also had a plastic bag on the rear passenger driver side floorboard containing 437.2 gross grams of methamphetamine. Under the front passenger seat, he had a "brick" containing 4-ANPP and fentanyl with a net weight of 984 grams (per lab testing).

Finally, he admitted that he is a citizen of Honduras and that he has no legal status in the United States. Records demonstrate that he has been removed on several occasions, the last time in 2016. At the end of his prison sentence, he will almost certainly be released to immigration custody and deported from the United States.

**APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY**

The parties agree with the findings and recommendations set forth by the Probation Office in the PSR in this case. The one count Information charges a violation of Title 21 United States Code Section 841(a)(1) and (b)(1)(B), Possession with Intent to Distribute 40 Grams or More of a Mixture and Substance Containing Fentanyl. Despite the dispute over the counting of the heroin noted above, the parties and Probation agree the combined converted drug weight was over 3000 kgs but less than 10,000 kgs.

As a result, the Parties and Probation agree that the Guidelines should be calculated as below:

a.  Base Offense Level:                                                                                          32

U.S.S.G. § 2D1.1(a)(5) and (c)(4) (Possessed 4,143.30 kilograms of converted drug weight, which is more than 3,000 kilograms but less than 10,000 kilograms)

b.  Safety Valve: U.S.S.G. 5k1.1                                                          -2

c.  Acceptance of Responsibility:                                                     -3

d.  Total Offense Level:                                                                        27

Guidelines Range: 78-97 months (based on Criminal History Category II).


**SENTENCING RECOMMENDATION**

Consistent with the Plea Agreement in this case, the parties join the Probation Office in requesting a sentence of 50-months imprisonment, followed by a 3-year term of supervised release with two special conditions: an order to stay away from the Tenderloin and suspicionless search condition. The Court should also order that Mr. Arrechaga pay the $100 special assessment, and forfeit the cash and cellphone seized incident to his arrest that he admits were the proceeds and otherwise used to facilitate his drug dealing. The stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, should he not be deported or otherwise ever return.

//

**I.      Section 3553 Factors**

      **A.      Nature and circumstances of the offense and history and characteristics of the defendant**

Mr. Arrechaga is a 32-year-old male who was born in Honduras.  He lacks immigration status and is removable under U.S. immigration law.  He has prior convictions related to drug dealing beginning in 2012.  The ones that count for sentencing purposes include a conviction on May 22, 2015, for being an accessory after fact arising out of his drug dealing activity in the Tenderloin.  *See* PSR ¶ 39. In addition, on October 13, 2018, he was again convicted in San Francisco for another violation of being an accessory after the fact in connection with his drug dealing in the Tenderloin.  He received 3 years of probation and a suspended sentence of 6 days in jail.

Unfortunately, Mr. Arrechaga never seemed to stop.  In 2019, he was arrested twice in connection with drug sales and successfully completed diversion in 2021 so that both cases were dismissed.  He continued dealing drugs and has an open case in San Francisco arising out of his arrest in 2022 that will likely be dismissed following his sentencing in this Court.  *See* PSR ¶¶ 46-49.  He also has a series of other arrests, as noted in the PSR, including a removal from the United States in 2016. *See* PSR ¶¶ 50-60.

The United States understands that Mr. Arrechaga had a tough time growing up in Honduras and trouble trying to find a legitimate way to earn money in this country. It is unfortunate that he has a daughter who has a serious medical issue that he will not be able to be with or help because of this conviction and the sentence he will likely be given.  *See* PSR ¶¶ 66 -71, 75. However, while the story of his life involves hardship, it does not justify the sale, nor for that matter, his use of fentanyl and other dangerous drugs.  He had lots of chances to stop, including the diversionary drug court in San Francisco, but apparently never did stop dealing drugs.

      **B.      Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant**

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis.  As the Court is aware, the proliferation of

highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself.  The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

The next several years will be difficult in prison, but the sentence proposed here is sufficient and not greater than necessary to ensure that Mr. Arrechaga and others are deterred from further drug dealing, and that our community is protected from the harms that drug dealing (and rampant use of fentanyl and other dangerous drugs) are doing to our community.  The proposed sentence in this case is a downward variance from the Guidelines range but one that the United States submits is appropriate given Mr. Arrechaga's conduct and criminal history, the unique problems the Tenderloin faces, and the need for deterrence and protection of the public.

## II.   The necessity of the proposed supervised release special conditions

A four-year term of supervised release would ordinarily be required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(B). Because of the safety valve, the parties and Probation have all agreed on a three-year term.  Supervised release is an important part of this disposition.  In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of his arrest) and to impose a strict stay-away from the Tenderloin for three years.

Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation if for any reason he is back in the United States:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Street, and on the south by Folsom Street.

UNITED STATES' SENT. MEMO                6
3:25-CR-00226 MMC                                                    V. 1/29/2025

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful general and specific deterrence will be significantly advanced by the terms of this agreement.  This prosecution's impact on illicit drug trafficking in the Tenderloin will be immediate, substantively serious with over four years of imprisonment, and sustained.  The stay-away condition is also necessary given the circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-CR-00002 CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553 CRB.

On the facts of this case, under the Section 3553(a) factors and given the provisions of the Plea Agreement, the United States respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of Section 3553(a).

**CONCLUSION**

For these reasons, the parties have entered into a C-Plea agreement that if accepted by the Court, will result in a 50-month sentence of imprisonment followed by a three-year term of supervised release with two special conditions, a stay away order, and suspicionless search condition, forfeiture of his phone and the cash he possessed, payment of the $100 special assessment, and those additional conditions as set forth in the PSR.  At the end of his prison sentence, Mr. Arrechaga will almost certainly be deported from the United States back to his home country, Honduras.

DATED: February 23, 2026

Respectfully Submitted,

CRAIG H. MISSAKIAN
United States Attorney

  */s/  Jeffrey Bornstein*
JEFFREY BORNSTEIN
Assistant United States Attorney